Mr. Luong was convicted in our Eastern District of California case of laundering money from two robberies of computer chip plants in the 1990s. Those two robberies were part of a much bigger case, a racketeering case in the Northern District of California for which Mr. Luong was sentenced to 25 years by Judge Patel. The first claim in this appeal is that the District Court committed procedural error in failing to address and take into account the sentencing guideline 5G 1.3 in imposing a 10-year sentence consecutive to the 25-year sentence in the Northern District. Guideline 5G 1.3 is designed and sets forth rules on imposing consecutive versus concurrent sentences and is designed so that when two cases are related and involve the same conduct, that the purpose is to achieve a total sentence that would have been the same if all the offenses were charged in the same proceeding. In this case, Luong's 25-year sentence in the Northern District involved a large number of computer chip robberies. The conspiracy charge specifically involved the two robberies involved in the Eastern District case, Xenon and Centon. Those two robberies weren't charged in the Northern District, were they? They were not charged as predicate acts to the substantive racketeering charge, but they were part of the racketeering conspiracy charge. And they were admitted at trial. The Northern District pre-sentence report has a section on offense conduct of the conspiracy, paragraphs 18 and 24 to 28, and they refer to both of those two robberies. Those two robberies were also used in the guideline calculations in the Northern District case, paragraphs 73 and 74 talk about how the loss calculation included the Centon robbery. They occurred in the Eastern District? Those two robberies actually occurred, I believe, in the Central District. But the money laundering occurred in the Eastern District? But the money laundering occurred in the Eastern District. And didn't Judge Shub take into account the other sentence when he made 240 months concurrent with the Northern District sentence? Isn't that what the guideline contemplates? What Judge Shub never did was address or take into account 5G 1.3. And his entire, when he said he didn't consider it when you spent a whole day talking about concurrent versus consecutive 5G 1.3? Well, he never addressed it. He never said that 5G 1.3 requires a concurrent sentence, but I think under 3553A, the court should go above that and give a consecutive sentence. And that's what's error by failing to consider the guidelines, and I cited two Out-of-Circuit cases. Although he thought very carefully about it, and he imposed this rather odd sentence, which was exceptionally long, given the guidelines for this actual crime in front of him, in a consecutive sentence, while longer than the upper limit of the guidelines, not preposterously longer. How much longer did this result in as a consecutive sentence? Ten years. Ten years in addition? Ten more years. Yes. And the top end of the guideline, as I recall, was 78 months? Yes. So he's, what, 42 months more than the top of the guideline in effect? Yes. But part of the sentence was required to be made consecutive, wasn't it? There was a five-year term, 924C, in the Northern District. Now, if the court would have just imposed, let's say, a guideline sentence of 78 months and ran it consecutive to the Northern District case, or ran that consecutive to the five years and the 924C, I don't think it would have added any additional time to the overall sentence. So, you know, he's very clear in that very long sentencing transcript that he wants to add time, and he says, it's going to be complicated, and the only way I can make sure this is going to happen, especially if I'm retired or dead when it comes back again from the Ninth Circuit, is to give you a very, very long concurrent sentence, because the consequence will be an additional ten years. Yes, and that's my last argument on the substantive reasonableness. I know it's a fairly difficult standard to meet, but I do think that in a case like this where there's 5G 1.3 is involved, it has more bite to it based on the Supreme Court's instruction in wit. In wit, the court rejected the double jeopardy argument that it was improper to sentence again where part of the conduct was used as relevant conduct in another case. But it said that part of the reason it rejected it was that the guidelines in 5G 1.3 allow you to alleviate the problem by adjusting the sentence and imposing a concurrent sentence that would take into account the two cases. And so because of that instruction, 5G 1.3, and because of the Supreme Court's decision in wit, I think the substantive reasonableness argument has even kind of more bite than normal when the court went substantially above the top of the guideline range. The last argument, too, is the other procedural error here is that the district court took into account the cost and time involved in prosecuting the case, and that is an improper factor. It was an 18-day trial. Kennedy. When you say he took it into account, though, I mean, he mentioned it, but he didn't discuss it at any length, did he? He didn't discuss it at length, but he discussed it during his imposition of judgment and sentence. Oh, he mentioned it. He mentioned it. And he mentioned it as, I think a fair reading of it, as one of the factors of why he was going for a consecutive sentence. The government, I'm quoting, the government expended a lot of time and money prosecuting this case, and it would be unfair to the government, unfair to the public, and unreasonable simply to impose a sentence that would run concurrent. So he's stating that as one of the reasons why he's imposing a consecutive 10-year sentence. Do I have any doubt that if we were to send this back to Judge Shubb and say, you know, that's not a factor, that he would change the sentence? It's pretty clear what he wanted to do. I would probably, yes, I would agree with that. That's why I'm asking it be remanded to a different judge. And I will reserve my remaining time for rebuttal. Okay. Thank you. Mr. Wong. If it pleases the court, counsel, my name is William Wong. I'm an assistant U.S. attorney from the Eastern District. I was one of the trial attorneys in this case, and I assisted in preparing the brief for the court. If I may, Judge Shubb sat on this case for over a month. He knew the facts of this case intimately. He knew of the violence that was perpetrated on the victims of Senton and Zenon. The government strongly disagrees with counsel that the Northern District consider those facts as the nature of the offense that's required by 3553A. What counsel is referring to is the loss calculation. Senton, there was about an $11 million loss. In the Zenon, there was about a $1.8 million loss. Only the loss calculations were considered, not the facts of the violence that was perpetrated. What precisely was the violence? They used guns. They put guns in the heads of the victims, made the victims get on their knees. One victim testified for the very first time in the Eastern District that he was shaken so bad that he started to make up a story that he had a family in hopes that he wouldn't be killed. Was anyone shot? No one was shot, Your Honor. So you're talking about violence that was threatened, but that doesn't sound like it was a very violent crime compared to an awful lot of crimes we see in this court. There was no actual injury perpetrated. That's the court's asking. That is correct. But this is something that the victims lived with for the rest of their life. Of course. But for you to say the violent nature of this crime and then it turns out that the only thing they did was put guns on them and never shoot, well, we know violence and this is, by comparison, relatively minor. I don't condone it. It's criminal. But nobody got shot. No one got shot, but when someone puts a gun to your head and makes you get on your knees, that's a pretty scary thing. I get that. And as they testified before Judge Shub, these witnesses, for the very first time, 10, 15 years later, are still shaking. And it's clearly an act that they will never forget. Now, Judge Patel never considered senton or xenon in her sentencing. In the sentencing transcript in the Northern District, she never mentioned it once. The indictment did not include senton or xenon ever mentioned either in the racketeering count in count one or in the conspiracy to commit recall in count two. Senton and xenon was never mentioned. And so, therefore, in light of the fact that there were other, I think approximately eight other computer chip companies that were mentioned, it's quite clear that the Northern District was not focused on this particular two cases. The Central District never charged these cases and prosecuted them to its fullest. And so these cases went basically unprosecuted until the Northern District charged them as the specified unlawful activity as part of the money laundering counts in this particular case. On the Supreme Court cases in Watts, Witt, and this Court's case in U.S. v. Fitch, the Court can consider as part of the nature and the characteristic of the offense those things that are part of the case. Now, as part of the money laundering, one of the elements of money laundering is specified unlawful activity. And the specified unlawful activity in this case was those two robberies. Counsel knew about that months in advance. And that evidence was put on by the government in this case. So the judge was clearly aware of that. Now, counsel, if I could comment on the Court's statement. As to Judge Shub's comment about whether or not the defendant can be sentenced on 3553 factors, he went through a litany, approximately two and a half pages, of the reasons why the judge chose that particular sentence. He considered the unwarranted disparity because the evidence showed clearly that John Thad LeWong, one of the leaders, Matty Chan, and this defendant here, Wee Chi LeWong, were equal crime bosses in this particular venture. In this venture, they provided guns, direction, surveillance, money, and everything that was required to perpetrate these violent acts. So clearly, these three individuals should have gotten a sentence that was similar. Instead. Well, wait a minute. Why is that so? I mean, we've got John Thad LeWong and we've got Matty Chan, and they're both sentenced by Judge Patel. Is that right? Yes, they were sentenced by Judge Patel. So Judge Patel sentences all three of them. That's correct. So she understands what crimes they've committed, and she very clearly differentiates among them, giving long sentences to all three, but as to this particular LeWong, the shortest of the three. So, I mean, Judge Patel clearly thought about it and thought that they were situated somewhat differently. Correct. He felt that was an unwarranted sentence. There was disparity that can be justified in light of the fact the evidence for all three was the same. Well, if the evidence against all three of them was the same, why did Judge Patel sentence them so differently? I don't know. You'll have to ask Judge Patel that. Because the record surely... I have to say, if Judge Patel, a very sensible judge, sentences them differently, I question your assertion that the evidence against them was the same. Well, Your Honor, you take a look at the way Judge Patel entered the sentence after the second time. She carefully constructed her sentence to preclude the Eastern District from sentencing the defendant to the 40-year term that Judge Shubb originally did. She ran her sentence concurrent to a sentence that didn't even exist yet. And so, for some reason, Judge Patel felt that this particular defendant should have gotten the 25 years. Judge Shubb evidently did not feel the same. He, the difference is, he heard the evidence. He heard the trial that discussed the Centon and Zenon robbery. Judge Patel did not. There was nothing in the Northern District trial that ever mentioned those two robberies. Your opponent earlier said that those robberies were part of the conspiracy in the Northern District case. Is that not correct? That's not correct. That's not correct. If you take a look at count two, it mentions numerous computer chip companies. And it mentions the overt acts and the object of the conspiracy. You will not find Zenon or Centon mentioned there. For purposes of sentencing in the Northern District, were these robberies counted for loss amount to determine the guideline and offense level? I believe one of the robberies was considered for loss amount in terms of the, yes, but not the facts of the robberies. And that's what 35- What you're saying is that the nature of those robberies was never before the Northern District. That's correct. Just the loss amount. That is correct. Now, the robberies that were before the Northern District, did they entail a comparable amount of what you call violence? Being in the Eastern District, I'm not as familiar with the robberies that- But it sounds like their modus operandi is to go in with the guns and hold them to the heads of the people and say, I'd like the chips, please, but you can tell me these are your cases, not mine. I believe that to be the case, but I wasn't there at the trial and I do not have an intimate understanding of all the facts of the robberies. The case was so large in our district alone that it took a lot of time just to master those facts. This case was huge. Now, one thing I do want to make a comment on, and that is this. The defendant complains about what Judge Chubb said regarding the extent of time used and the cost to the government. But the judge did not make that analysis or that comment until sometime after he went through the analysis under 3553, which occurred on pages that discussed unwarranted disparity, discussed the violence of the case, the nature of the offenses, discussed just punishment and deterrence. The judge went through an extensive analysis and thorough analysis of 3553 factors. It wasn't until later he made that comment. Now, but before he made that comment. Why would he even make that comment? I don't know why he made that comment. Unless he thought it was important to sentence him. Well, he did. Before he said that, he made this comment at the end of his analysis. He says, considering all of the sentencing factors, it is my intention to impose a sentence that will result in Mr. LeWong serving an additional 10 years, 120 months, in addition to the sentence imposed by Judge Patel. That's on the Excerpt of Records 66. So he made it clear that the 120-month sentence was based on 3553 factors. Well, maybe he thought expense to the government was a 3553 factor.  He never said that prior to imposing the 120 months. It was until afterwards. Secondly, I want to just make one last comment. That is, the fourth consideration regarding plain error review is that it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. In this particular case, there was more than enough factors under 3553 to justify the 120 months. And so I don't think it seriously affected the proceedings here. And since nothing was argued at the sentencing by counsel, the government could not have responded. Okay. Thank you. You've saved a couple of minutes. Thank you. Three points I want to make. First of all, that Mr. LeWong was actually charged in the central district, southern district, northern district with robberies, and the eastern district with the money laundering. Both the central district and the southern district agreed to dismiss the charges. There was a stipulation without prejudice after the convictions in the northern district because he got a 25-year sentence, which was sufficient to punish for the conduct. The eastern district was the only district that refused to do that, and that's when we proceeded with the money laundering charges. Now, are we here on plain error? You're not here on plain error on, I believe, on any of the three issues. The only one the government argued was on the improper factors of the time and cost of prosecution. Maintaining the cost. Right. And on that one, I think it would be plain error, but my main argument would be that there was no opportunity to object. We had, the court mentioned, we had multiple briefs, multiple hearings, and then after everything, the court said, anything else you want to say? Party said, no, I'm imposing the judgment and sentence. He poses, says 120 months consecutive, imposes the sentence, and then says, explains the reasons why. At that point, it was kind of fruitless to, meaningless to object. And so I think the point of objecting is to bring it to the judge's attention so they could change, make a ruling. But at that point, it was too late. But in imposing a money laundering sentence, isn't it proper for the, or necessary for the district judge to take into consideration the underlying criminal act? I don't disagree with that. And isn't that exactly what Judge Shub did here? And make a determination that you disagree with, that this was a heinous enough underlying act to impose a very stiff sentence. I don't disagree with that, but what I disagree with is that the court cannot impose substantial consecutive time when that conduct was already taken into consideration in the Northern District. And in this case, it certainly was part of the, I disagree with Mr. Wong here, part of the conduct of the conspiracy and part of the 3553A factors. Specifically, in the Northern District Pre-Sentence Report, if you look at paragraphs 18 and then 24 and 26, it says the two robberies were admitted at trial, and it talks about the victims, the robbers using guns and restraining the victims with ties. Judge Patel had all that evidence, sought at the trial, and then determined under 3553A in the guidelines what the appropriate sentence was and didn't have to specifically talk about each individual robbery. Yeah. Would you be standing here making this argument if this had been a guideline sentence imposed consecutively as distinct from an out-of-guideline 10-year sentence imposed consecutively? That is to say, was Judge Shub acting appropriately in determining that some consecutive sentence should be imposed for this crime? On the substantive reasonableness, I probably would still be making the argument, but it would be weaker. But if it's a guideline sentence, that's a pretty hard argument to make. Yes. And my argument would be that 5G 1.3 and the factors, given the 25-year sentence, the sentence was substantively unreasonable. But I think the Court is correct. This is a much stronger case because the Court went substantially above the top of the guidelines. It added 42 months to the 78 months that it was the top of the guidelines. Right. Got it. Okay. Thank you. Thank both sides for your arguments. Thank you. United States v. America v. Luong, submitted for decision. The next case this morning, Lukoff v. Lynch. Thank you. Thank you.
judges: Tashima, W. Fletcher, Gettleman